UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| SYLVIA HERNANDEZ, | ) | No. CV 10-8414-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 9, 2010, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 22, 2010, and December 6, 2010. The parties filed a Joint Stipulation on July 14, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 28, 1954. [Administrative Record ("AR") at 77.] She attended school into the twelfth grade, and has past relevant work experience as a waitress. [AR at 29, 39, 114-15, 117.]

On December 21, 2006, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been disabled since June 22, 2006, due to pain in her left foot, her back, at least one arm, and her right hand. [AR at 77, 103-05, 114, 141, 153.] After plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 79-89.] A hearing was held on May 13, 2008, at which time plaintiff appeared with her attorney and testified on her own behalf. [AR at 35-76.] A vocational expert also testified. [AR at 64-73.] On July 16, 2008, the ALJ determined that plaintiff was not disabled. [AR at 24-31.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 14, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.
### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since her alleged disability onset date, June 22, 2006. [AR at 26.][1] At step two, the ALJ concluded that plaintiff has the severe impairments of a history of left foot osteomyelitis and hammer toe surgery. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform medium work,[3] "except for more than occasional climbing, balancing, stooping, kneeling, crouching or crawling." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 29.] At step five, the ALJ found, relying on the Medical-Vocational Guidelines (i.e., "the grids") and the vocational expert's opinion, that plaintiff can perform jobs that exist in significant numbers in the national economy, specifically as a hand packager and a cleaner. Accordingly, the ALJ found plaintiff not disabled. [AR at 30-31.]

/

/

---

[1]  The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010. [AR at 26.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  "Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

# V.

# THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ improperly evaluated the opinion of the treating physician; and (2) the ALJ's residual functional capacity assessment is not supported by substantial evidence based on the record as a whole. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A. TREATING PHYSICIAN'S OPINION

Plaintiff argues that the ALJ improperly rejected the treating physician's opinion. [JS at 3-7.] The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount it. An ALJ may afford less weight to a treating physician's opinion that conflicts with other medical evidence only if the ALJ provides specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion

is 'still entitled to deference.'") (citation omitted); Social Security Ruling[4] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similar rules apply to an ALJ's evaluation of an examining physician's opinion. Lester, 81 F.3d at 830-31.

The record shows that plaintiff underwent hammer toe surgery on her left foot on June 20, 2006. [AR at 170.] The record also shows that plaintiff received medical treatment from September 2005 to April 2008 from physicians and physician assistants at Sylmar Medical Center for, among other things, pain, numbness, and swelling in her left foot. [See AR at 215-18, 222, 243, 271, 302.] In an undated letter written on or before June 5, 2008,[5] Dr. Marvin S. Mina, a physician at Sylmar Medical Center, summarized plaintiff's treatment history, stating that plaintiff had a history of left foot osteomyelitis and peripheral neuropathy, and opining that plaintiff had early signs and symptoms of chronic obstructive pulmonary disease and peripheral vascular disease. [AR at 312.] Dr. Mina recommended that plaintiff "elevate her foot daily, when not in use for 15-20 minutes at a time to relieve swelling"[6] and noted that "[e]xcessive walking or standing greater or equal to 10 minutes leads to edema." [Id.] In the decision, the ALJ rejected Dr. Mina's opinion concerning plaintiff's limitations on several grounds: no objective medical findings or observations in any of the treating records supported the diagnoses of peripheral neuropathy, vascular disease or pulmonary disease; nothing in the record indicated that plaintiff's remaining medical conditions would require her to keep her left foot elevated at the level of frequency

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] Dr. Mina's letter is undated, but was faxed to the Social Security Administration by Health Advocates, LLP, plaintiff's representative, on June 5, 2008. [AR at 311-12.]

[6] The Court notes that this statement is ambiguous. Dr. Mina could have meant that plaintiff should elevate her foot daily every 15 to 20 minutes when not in use, or that plaintiff should elevate her foot daily, when not in use, for 15 to 20 minutes at a time. Upon remand, the ALJ should clarify Dr. Mina's recommendation to the extent necessary to reach a determination in this case.

recommended by Dr. Mina; and an examining physician had issued findings contrary to Dr. Mina's opinion.[7] [JS at 28.]

Because Dr. Mina's opinion was contradicted by other medical opinions, the ALJ was required to provide specific and legitimate reasons to reject it. The Court concludes that the ALJ's reasons for rejecting Dr. Mina's opinion are not legally sufficient.

First, the ALJ's bare assertion that Dr. Mina's diagnoses were not sufficiently supported by the treatment record or the objective medical findings is not a proper reason, by itself, for rejecting the opinion because it fails to reach the level of specificity required for rejecting a treating physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ's conclusory assertion that Dr. Mina's opinion was not supported by objective medical findings or observations in the treating records [see AR at 28], without explaining how the record was inconsistent with Dr. Mina's opinion, does not provide the degree of specificity required to reject Dr. Mina's opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating

---

[7] While the ALJ did not explicitly state that he was relying on the examining physician's findings to reject Dr. Mina's opinion, the ALJ rejected Dr. Mina's opinion and then noted that the examining physician had concluded plaintiff could "lift and carry 50 pounds occasionally and 20 pounds frequently, stand, sit or walk for eight hours in a normal workday, and perform occasional bending, stooping, crouching, or crawling." [AR at 28, 249.] Thus, it appears that the ALJ relied on the examining physician's findings, at least in part, to reject Dr. Mina's opinion.

physician's opinion was flawed"); see also, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion).

Second, an ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of an examining physician[,]' an ALJ still must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). Here, while the ALJ did not explicitly state that he was relying on the examining physician's findings to reject Dr. Mina's opinion, his discussion of the examining physician's findings immediately followed his other reasons for rejecting Dr. Mina's opinion. Thus, it appears that the ALJ relied on the examining physician's findings, at least in part, to reject Dr. Mina's opinion. [See AR at 29.] The ALJ's simple reference to the examining physician's findings, however, does not justify his rejection of the treating physician's opinion. The ALJ's rejection of Dr. Mina's opinion without expressly setting forth specific and legitimate reasons for doing so was improper. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record."); see also Hostrawser v. Astrue, 364 Fed. Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations of the evidence, rather than those of the treating physicians, were correct).

Moreover, the ALJ's assertions that Dr. Mina's opinion was not supported by any objective medical evidence or clinical findings is not entirely accurate. Despite the ALJ's statement that there is no evidence of peripheral neuropathy, vascular disease, or pulmonary disease [AR at 28], plaintiff's treatment records indeed show a history of pain [AR at 215-16, 218, 271, 302], numbness [AR at 170, 215, 302], swelling [AR at 170, 216, 218], osteomyelitis [AR at 174, 209-17, 289-90, 304, 307], suspected gangrene [AR at 171, 256], and a bone spur [AR at 217, 270], all in plaintiff's left foot. Furthermore, Dr. Harold Cohen in fact diagnosed plaintiff with peripheral neuropathy in April 2006.[8] [AR at 227.] Thus, this reason to reject Dr. Mina's opinion is not legitimate, and remand is warranted on this issue.

Finally, Dr. Mina completed an RFC assessment of plaintiff in September 2008, after the ALJ had rendered his decision. [AR at 314-18.] Dr. Mina based his assessment of plaintiff's limitations on Sylmar Medical Center's treatment history of plaintiff, dating back to September 2005. [AR at 318.] Dr. Mina concluded, among other things, that plaintiff can continuously sit for only 20 minutes at a time and continuously stand for only 10 minutes at a time, that she must rest for 5 to 10 minutes every 20 to 30 minutes, and that, at a sedentary job, she should elevate her legs for 50 percent of an eight-hour work day. [AR at 316-17.] Upon remand, the ALJ should consider this assessment together with the rest of the record.

**B.    RFC DETERMINATION**

Plaintiff next contends that the ALJ erred in his residual functional capacity determination that plaintiff has the ability to perform medium work "except for more than occasional climbing, balancing, stooping, kneeling, crouching or crawling." [JS at 12-13; AR at 26.] As the ALJ's RFC determination was based, in part, on his rejection of Dr. Mina's opinion, which the Court finds was improper for the reasons discussed above, the ALJ is instructed to reassess plaintiff's RFC after he has reconsidered the treating physician's opinion.

/

---

[8] A diagnosis of peripheral neuropathy appears on two additional exam records bearing Dr. Cohen's stamp, but not his signature. [AR at 226, 231.]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted in order for the ALJ to reconsider Dr. Mina's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 31, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE